UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TWO PALMS SOFTWARE, INC., et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:10-CV-1045(CEJ) |
| WORLDWIDE FREIGHT MANAGEMENT LLC., et al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56(c). Plaintiffs oppose the motion and the issues are fully briefed.

**I. Background**

Plaintiff Stuart Tomlinson is a computer software developer. In 2001, Tomlinson entered into an agreement with defendant David Barton to develop "Management Software," a internet-based computer software system designed for Barton's freight and storage management business. Tomlinson and Barton also agreed to form plaintiff Two Palms Software, Inc., a company that develops Management Software for end users. In 2004, defendant Interstate Logistics, LLC., entered into an oral agreement with plaintiffs to use Management Software in exchange for paying subscription and enhancement fees. Pursuant to the agreement, Interstate would pay Two Palms an up-front customization fee of $2,000.00 and then a monthly subscription fee of $300.00.

In February 2007, Interstate failed to pay its subscription and enhancement fees. Shortly thereafter, Tomlinson allegedly discovered that Interstate had continued

to use a modified version of Management Software without authorization and without making payments to plaintiffs. Plaintiffs allege that Interstate was able to modify Management Software by saving a copy of the program on a server that could not be accessed by plaintiffs.

On August 6, 2010, plaintiffs filed a ten-count amended complaint against Interstate, and other parties who allegedly used a modified and unauthorized version of Management Software. The claims pending before the Court are breach of fiduciary duty (Count II), breach of contract (Count VII), copyright infringement (Count VIII), violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 537.525 (Count IX), and violation of the Missouri Computer Tampering Act, Mo. Rev. Stat. § 417.450, *et seq*. (Count X).[1]

Interstate and its founder defendant James Wheelehon move for partial summary judgment on Counts VII and IX, pursuant to Fed. R. Civ. P. 56(c). They assert that plaintiffs' breach of contract claim is preempted by the Copyright Act and that Management Software is not a trade secret under Missouri law.

**II. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and

---

[1] Plaintiffs' claims of conversion (Count III), conspiracy (Count IV), tortious interference (Count V), and unjust enrichment (Count VI), were dismissed by the Court in an Order entered into on February 18, 2011. (Doc. #83).

must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

Defendants first argue that plaintiffs' breach of contract claim is preempted by the Copyright Act. "The Copyright Act provides the exclusive source of protection for all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright. National Car Rental System, Inc. v. Computer Associates Intern., Inc., 991 F.2d 426, 428 (8th Cir. 1993). The preemption provision is found in section 301(a) of the Copyright Act, which states in part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright…are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

3

17 U.S.C. § 301(a).

"[A] state cause of action is preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." National, 991 F.2d at 428.

The parties appear to agree that Management Software is within the subject matter of copyright---satisfying the first part of the analysis. The issue becomes whether the rights at issue in plaintiffs' breach of contract claim are "equivalent" to the exclusive rights outlined in the Copyright Act. In determining whether the rights at issue are equivalent, a court must consider whether "there is an 'extra element' that changes the nature of the state law action so that it is *qualitatively* different from a copyright infringement claim." Huckshold v. HSSL, L.L.C., 344 F.Supp.2d 1203, 1206 (E.D. Mo. 2004). "The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action." Stromback v. New Line Cinema, 384 F.3d 283, 301 (6th Cir. 2004).

To establish a breach of contract claim, plaintiffs must establish "(1) the existence of an enforceable contract between the parties, (2) mutual obligations under the terms of the contract, (3) one party's failure to perform the obligations imposed by the contract, and (4) the other party's thereby incurring damage." Huckshold, 344 F.Supp. 2d at 1207(citing McClain v. Papka, 108 S.W.3d 48,53 (Mo. Ct. App. 2003).

Breach of contract claims are typically not preempted by the Copyright Act. Id. ("courts generally read preemption clauses to leave private contracts unaffected.") Contracts generally affect the contracting parties, and therefore, courts have held that they do not create 'exclusive rights' within the scope of the Copyright Act. Huckshold,

4

344 F. Supp 2d at 1207("A copyright is considered a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights'."); see also Lipscher v. LRP Publications, Inc., 266 F.3d at 1318 ("[C]laims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties."). Furthermore, to succeed on a breach of contract claim, a plaintiff must prove an extra element that is qualitatively different from a copyright infringement claim--the existence of a valid contract. Lipscher, 266 F.3d at6 1318-1319 (finding no preemption in breach of contract claim; plaintiff had to show an extra element-" the existence of a valid contract between the parties.")

A breach of contract claim, however, may be preempted by the Copyright Act when the plaintiff merely alleges that the defendant breached the contract by infringing on the copyright. See National Car, 991 F.2d. at 431. Indeed, plaintiffs allege that Interstate breached their contract by modifying and using an unauthorized version of Management Software. However, the substance of plaintiffs' breach of contract claim concerns Interstate's failure to pay subscription and enhancement fees. Plaintiffs allege that Interstate entered into an agreement with plaintiffs and breached that agreement when it continued to use Management Software without paying plaintiffs the subscription and enhancement fees. The substance of the breach of contract allegations here is qualitatively different from those of a copyright infringement claim and, therefore, Count VII is not preempted by the Copyright Act.

Defendants also argue that Interstate was not obligated to pay its subscription and enhancement fees because it terminated the contract with plaintiffs in February 2007. Defendants' argument does not affect the Court's ruling. Plaintiffs' breach of

5

contract claim requires proof an element outside the scope of the Copyright Act, despite whether or not Interstate terminated their contract with plaintiffs.

Defendants next argue that plaintiffs cannot establish a claim under the Missouri Uniform Trade Secrets Act (MUTSA), because Management Software's source code is not a trade secret. To establish a violation of MUTSA, plaintiffs must demonstrate (1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages. Secure Energy, Inc. v. Coal Synthetics, LLC, 708 F.Supp.2d 923, 926 (E.D.Mo. 2010). The statute defines a "trade secret" as:

> [I]nformation, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453.

Missouri courts have used the following factors to determine whether information constitutes a trade secret under the MUTSA: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Cerner Corp. v.

Visicu, Inc., 667 F.Supp.2d 1062, 1076–1077 (W.D.Mo.2009) (citing Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins., 169 S.W.3d 905, 909–10 (Mo.Ct.App.2005)).

Defendants contend that Management Software's source code is not a trade secret because plaintiffs have failed to take reasonable efforts to maintain its secrecy. In support, defendants point to Tomlinson's disclosure of the source code to the Copyright Office and to employees who had not signed a confidentiality agreement.

It is well established that a source code is a trade secret. JustMed, Inc. v. Byce, 600 F.3d 1118, 1129 (9th Cir. 2010). However, public disclosure of a source code is fatal to its existence as a trade secret. See Reliant Care Management, Co., Inc. v. Health Systems, Inc, 2011 WL 4342619, at * 9 (E.D.Mo. Sept. 2011). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984).

During his deposition, Tomlinson testified that he filed the first 50 pages of more than 80,000 lines of source code with the Copyright Office. (Doc. #116-2, p. 210). That action in itself is not necessarily inconsistent with maintaining the secrecy of the source code. JustMed, 600 F.3d at 1129 (holding that a source code may remain a trade secret, even if a portion of it was disclosed to the Copyright Office. Id. (citing Compuware Corp. v. Serena Software Int'l, Inc., 77 F. Supp.2d 816, 821 (E.D.Mich. 1999)). Furthermore, federal regulations provide that the Copyright Office will grant requests for reproductions of materials deposited in connection with a copyright registration only when at least one of the following conditions has been met: (1) written authorization from the copyright claimant or owner; (2) a written request by an attorney for a plaintiff or defendant in connection with actual or prospective litigation; or (3) an order by a court having jurisdiction of a case in which the

requested material is to be used as evidence. 37 C.F.R. § 201.2(d)(2). Because Tomlinson only disclosed a portion of the source code and the Copyright Office limits access to deposited materials, a reasonable jury could find that plaintiffs took reasonable efforts to maintain the secrecy of the source code. See Reliant, 2011 WL 4342619, at *9 (concluding that depositing materials to the Copyright Office did not preclude plaintiffs from asserting the work constituted a trade secret.).

Tomlinson testified that he provided two employees access to Management Software's source code without requiring them to sign a confidentiality agreement. (Doc. # 116-3, p. 210-211, 247). Under Missouri law, the absence of a written confidentiality agreement will not necessarily defeat a trade secret claim. Lyn-Flex West, Inc. v. Dieckhaus, 23 S.W.3d 693, 699(Mo. App. E.D. 1999). The presence of a confidentiality agreement, however, is an important factor to consider in determining whether reasonable steps were taken to maintain a work's secrecy. See Auto Channel, Inc. v. Speedvision Network, LLC, 144 F.Supp.2d 784, 795 (W.D.Ky.2001). The test is not whether a party took every conceivable step to protect its trade secret information. Rather, all that is required is that a party take reasonable steps. Surgidev Corporation v. Eye Technology, Inc., 828 F.2d 452, 455 (8th Cir.1987). Generally, the issue of whether a party took reasonable steps to maintain secrecy of information is an issue of fact. Id.

Here, there is evidence that there were only four employees of Two Palms who had access to the source code, that the computers used by two employees (Chrissy Greenwalt and Stuart Tomlinson) were password-protected and not freely accessible to others, and that the source code was not disclosed to customers. (Doc.# 116-7, p. 56-58; Doc.# 166-3, p. 210). Given these circumstances, the Court cannot conclude,

as a matter of law, that plaintiffs failed to take reasonable steps to protect their trade secret.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for partial summary judgment [#115] is **denied** .

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2012.